UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES WOLFRAM, on behalf of himself and all other similarly situated employees nationwide, and on behalf of the Ohio Rule 23 Class, | : : : : : | Case No. 1:12-cv-599 |
| Plaintiffs, | : : | Judge Timothy S. Black |
| vs. | : : | |
| PHH CORPORATION, *et al.*, | : : | |
| Defendants. | : | |

**ORDER:
(1) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND;
(2) GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT**

This civil action is before the Court on the parties' cross-motions for summary judgment (Docs. 106, 112) and responsive memoranda (Docs. 115, 118).

### I. BACKGROUND FACTS AND PROCEDURAL POSTURE[1]

This is an overtime and minimum wage collective action. Named Plaintiff James Wolfram, joined by 195 opt-in Plaintiffs, are current and former Loan Officers ("LOs")[2] employed by Defendants PHH Corporation ("PHH"), PHH Mortgage Corporation ("PHH Mortgage"), and PHH Home Loans, LCC ("PHH Home Loans") (collectively

---

[1] The parties' undisputed facts are incorporated in this Order. (*See* Docs. 106-2, 112-1, 116, 118-1).

[2] Defendants refer to "Loan Officers" as "Mortgage Advisors." For purposes of this Order, the Court will refer to them as LOs.

"Defendants"). Plaintiffs allege that Defendants misclassified them under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., as exempt employees and denied them minimum wage and overtime compensation. Defendants deny liability, asserting that Plaintiffs are exempt from overtime requirements because they are outside sales persons.

**A. Parties**

Defendant PHH is a domestic corporation that provides mortgage-banking services to financial institutions and real estate brokers nationwide. PHH is the parent corporation of Defendant PHH Mortgage. Defendant PHH Home Loans is a joint venture company between partner subsidiaries of PHH and Realogy Holdings Corporation ("Realogy"). Realogy created a subsidiary called NRT LLC ("NRT") which is the largest residential real estate brokerage company in the United States. NRT, and ultimately Realogy, own real estate offices under such realtor names as Coldwell Banker, ERA, Sotheby's, and Century 21 (collectively "the Realtors"). PHH Mortgage provides financing for the Realtors.

Plaintiffs are persons who worked as LOs for PHH at some point within three years prior to December 21, 2012 (Doc. 40 at 10). Defendants placed LOs in real estate offices across the country.[3]

---

[3] *See e.g.*, (Doc. 112-6, Ex. 16 at 20) (Plaintiff Molony testified that he worked in real estate offices in Florida); (*Id.*, Ex. 17 at 15-16) (Plaintiff Cervantes testified that he worked in real estate offices in Georgetown in the District of Columbia); (*Id.*, Ex. 18 at 18-19) (Plaintiff Morris testified that she worked in real estate offices in San Diego, California); (Doc. 112-7, Ex. 20 at 48-49) (Plaintiff Wolfram testified that he worked in real estate offices in Cincinnati, Ohio); (*Id.*, Ex. 21 at 11) (Plaintiff Panton testified that she worked in real estate offices in Atlanta, Georgia); (*Id.*, Ex. 22 at 18-19) (Plaintiff Breton testified that she worked in real estate offices in Phoenix, Arizona); (*Id.*, Ex. 23 at 49-50) (Plaintiff Abshear testified that she worked in real estate offices in Arkansas).

Plaintiffs' main job duty was to sell mortgage loans.[4] (*See e.g.*, Doc. 112-3, Ex. 5 at 24, 55; Doc. 112-7, Ex. 20 at 18, Ex. 21 at 21).

### B. Plaintiffs' Employment with Defendants

Defendants usually assigned Plaintiffs to work from one to three real estate offices. Plaintiffs were typically provided with a physical space to complete paper or computer work at their assigned offices. Some LOs had a designated desk or cubicle, while others simply used communal space. Defendants intended for LOs to have direct access to real estate offices in order to develop relationships with the agents in those offices, who hopefully would, in turn, refer business to the LOs assigned to that office.

PHH's primary marketing relationship involved its business venture with Realogy, which provided to LOs access to designated real estate agencies, so that LOs could market directly to real estate agents at their respective places of business. According to PHH Home Loans' leasing spreadsheet, PHH Home Loans paid for leasing in approximately 340 real estate offices in 24 states. (Doc. 112-9, Ex. 10). According to the office space agreement between NRT and PHH Home Loans ("Office Space Agreement"), Defendants had an agreement with NRT that LOs employed by PHH Home

---

[4] PHH Mortgage's LO position description sets forth the expectation that an LO's primary job was to sell loans:

> Mortgage advisors are responsible for generating loan volume and closed loans through sales and marketing activities. They will maximize and enhance volume opportunities by promoting our competitive mortgage products, services, and programs in their assigned Real Estate Brokerages, Mortgage Advisors will originate mortgage loans using point of sales technology, or offer customers the choice of originating the loan via telephone or via the internet.

(Doc. 106-2 at ¶ 27).

Loans would have access to certain premises and utilities (*e.g.*, telephone services, conference rooms, common areas, and receptionist area).

There was also a marketing agreement between the Realtors and PHH Mortgage ("Marketing Agreement"). (Doc. 112-9, Ex. 10 at D000598). The Marketing Agreement stipulated that the Realtors were required to recommend PHH Mortgage as their preferred provider of mortgage programs to their franchisees' offices. The Marketing Agreement also provided that PHH Mortgage would pay a monthly marketing fee to the Realtors (including Realogy) of $83,334 per month. Further, PHH Mortgage had separate marketing agreements with the independent real estate franchises that allowed LOs into their offices. In limited situations, PHH paid a rental fee to the real estate agency for the LOs use of a designated desk or cubicle. In approximately 13 states, PHH paid a leasing fee for the use of office space as required by those states regulations.

It is undisputed that LOs' primary responsibility was to sell mortgage loans to clients through their relationship with independent real estate agents. For example, if an LO were assigned to multiple local Coldwell Banker real estate offices, her job was to target the agents, their clients, and the homebuyers at each such real estate office. Despite having offices in real estate agencies, LOs reported only to their regional manager, who was a PHH employee. LOs were generally free to set their own schedules, including what days they worked at their assigned real estate agencies, what days they worked from home, and where they met clients. LOs compensation was 100% commission based.

## C. Procedural Posture

On October 22, 2012, Plaintiffs filed a motion for conditional certification and judicial notice, requesting that the Court conditionally certify the class as a collective action and authorize that notice be sent to all LOs who worked for Defendants at any time within three years of the date the Court ruled on the motion.[5] (Doc. 31). On December 21, 2012, the Court granted in part and denied in part Plaintiffs' motion for conditional certification. (Doc. 40). Specifically, the Court conditionally certified a class of LOs who worked for PHH Mortgage and/or PHH Home Loans, but excluded individuals working for three independent subsidiaries of PHH Home Loans (*i.e.*, Axiom Financial, LLC, NE Moves Mortgage, LCC, and RMR Financial LLC. (*Id.*)

After the close of the notice period, the conditionally certified class consisted of 196 current and former PHH LOs.[6] In October 2013, Defendants agreed to allow four additional LOs to join the conditionally certified class. (Docs. 97, 98). Separately, five opt-in Plaintiffs withdrew from the lawsuit. (Docs. 51, 89, 90, 100, 102).

During discovery, the parties agreed for each to select up to ten individual LOs as "Discovery Plaintiffs." The Discovery Plaintiffs were the focus of written discovery requests and depositions. In total, twelve LOs were deposed, including Kristine Rausch, who chose not to participate in the litigation. Plaintiffs also deposed two Regional

---

[5] Plaintiffs' motion specifically excluded "persons who worked as loan officers for Defendants in the state of California prior to February 2, 2010, and who signed a settlement and release form in connection with the *Frank v. PHH Corp., et al.* litigation." (Doc. 31).

[6] Defendants never moved to decertify the class. The deadline to so move passed on May 5, 2014. (Doc. 105).

5

Managers, Bryan Phillips and Deborah Lange. Discovery closed on February 28, 2014. (Doc. 101).

### D. The Parties' Theories of the Case

Plaintiffs ask this Court to find as a matter of law that:

(1) Plaintiffs' sales activities inside their assigned real estate offices, as well as at their homes, was work performed at the "employer's place of business" as contemplated by the relevant FLSA regulations;

(2) any sales work that Plaintiffs engaged in outside of the aforesaid real estate offices and homes was not done customarily and regularly away from the employer's place of business; and

(3) Plaintiffs are therefore non-exempt employees under the FLSA.

In other words, Plaintiffs ask for a judicial declaration that all of their sales work performed inside their assigned real estate offices and at home are to be classified as non-exempt sales, rather than "outside sales."

Defendants ask this Court to find as a matter of law that:

(1) Plaintiffs' work inside their assigned real estate offices, as well as at their homes' was not performed at their "employer's place of business" as contemplated by the relevant FLSA regulations;

(2) Even if Plaintiffs' work inside their assigned real estate offices and home offices was performed at the "employer's place of business," Plaintiffs were customarily and regularly engaged in outside sales activity and were therefore exempt workers under the FLSA's outside sales exemption; and

(3) Defendants did not intentionally violate the law, and, therefore, a two-year statute of limitations shall apply.

## II.  STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (1986).

## III.  ANALYSIS

The FLSA requires an employer to pay minimum wage and overtime compensation to employees who work more than 40 hours per week.  *See* 29 U.S.C. §§ 206(a)(1); 207(a)(1).  Nevertheless, workers employed as "outside salespersons" are exempt from these requirements.  *See* 29 U.S.C. § 213(a)(1).

An outside salesperson is defined as an employee:

(1) Whose primary duty is:

7

> (i) making sales…, or
>
> (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or consumer; and
>
> (2) Who is customarily and regularly engaged away from the employer's place of business in performing such primary duty.

29 C.F.R. § 541.500.

Because the outside sales exemption is an affirmative defense, Defendants bear the burden of establishing its application. *See Speert v. Proficio Mortg. Ventures*, *LLC*, No. JKB–10–718, 2011 WL 2417133, at *6 (D. Md. June 11, 2011). Moreover, because the FLSA is a remedial act, its exemptions are narrowly construed. *See Arnold v. Ben Kanowsky*, *Inc.*, 361 U.S. 388, 392 (1960) ("We have held that these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.").

Nearly seventy years ago, in interpreting a prior version of the FLSA, the United States Court of Appeals for the Tenth Circuit explained the rationale behind the outside sales exemption:

> The reasons for excluding an outside salesman are fairly apparent. Such salesman, to a great extent, works individually, there are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman.

*Hantz v. Prospect Mortg., LLC*, 1:13cv1435, 2014 U.S. Dist. LEXIS 14359, at *21 (E.D. Va. Feb. 5, 2014) (quoting *Jewel Tea Co. v. Williams*, 118 F.2d 202, 207 (10th Cir. 1941)). This rationale remains current and viable today.

Thus, to avail themselves of the outside sales exemption affirmative defense contained in 29 U.S.C. § 213(a)(1), Defendants must prove two distinct elements: (1) Plaintiffs' primary work duty was to make sales; and (2) Plaintiffs were customarily and regularly engaged away from the employer's place of business in performing this primary sales duty. 29 C.F.R. § 541.500.

### A. Primary Sales Duty

The FLSA defines "sale" or "sell" to include "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k). The "term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). In this case, both parties stipulate in their undisputed facts that Plaintiffs' primary duty as an LO was to make sales within the meaning of the FLSA's outside sales exemption.[7]

### B. Customarily and Regularly

The only disputed question regarding Defendants' affirmative defense of the outside sales exemption is whether Plaintiffs "customarily and regularly" engaged in exempt sales activities away from Defendants' offices. The phrase "'customarily and regularly' means a frequency that must be greater than occasional but which, of course,

---

[7] *See also* DOL Wage Hour Op. Ltr. No. FLSA2006-11 at 3 (mortgage loan officers who sold mortgage loan packages fulfilled the sales requirement of the exemption).

may be less than constant." 29 C.F.R. § 541.701. This includes "work normally and recurrently performed every workweek," but does not embrace "isolated or one-time tasks." *Id*.

The phrase "away from the employer's place of business" is addressed in another regulation, which provides:

> An outside sales employee must be customarily and regularly engaged "away from the employer's place or places of business." The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door to door, at the customers home. Outside sales does not include sales by mail, telephone or the internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for the telephonic solicitation of sales is considered one of the employer's place of business.

29 C.F.R. § 541.502. The Department of Labor ("DOL") has concluded that selling or sales related activity outside the office for "one or two hours a day, one or two times a week" can satisfy the second prong of the exemption. *See* DOL Wage Hour Op. Lts. No. FLSA2007-2 (Jan. 25, 2007).[8]

Therefore, a salesperson is exempt if she performs her sales work away from a fixed site (used by the salesperson as a headquarters or for the telephonic solicitation of sales) on a greater than occasional basis. *See Cougill v. Prospect Mortg., LLC*, 1:13cv1433, 2014 WL 130940, at *5 (E.D. Va. Jan. 14, 2014) (citing *Olivo v. GMAC Mortg. Corp.*, 374 F.Supp.2d 545, 550–51 (E.D. Mich. 2004)).

---

[8] DOL opinion letters are not binding on courts, but "constitute a body of experience and informed judgment" that are given "substantial weight." *Flood v. New Hanover Cnty.*, 125 F.3d 249, 253 (4th Cir. 1997).

### 1. *"Employer's Place of Business"*

#### a. Plaintiffs' assigned real estate offices

Based on the various agreements that PHH Mortgage and PHH Home Loans made with Realogy and the Brands, it is clear that the Brands were required to permit LOs to work from their assigned real estate offices and have access to the real estate agents who worked in those offices. (Doc. 112-1 at ¶¶ 30-37; Doc. 116 at ¶¶ 30-37). The assigned real estate offices were not owned by PHH Home Loans or PHH Mortgage. However, FLSA regulations make clear that ownership is not required to establish a fixed site as an "employer's place of business." Specifically, 29 C.F.R. § 541.502 states that "any fixed site… used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, *even though the employer is not in any formal sense the owner or tenant of the property*." (Emphasis supplied). The assigned real estate offices functioned as Plaintiffs' headquarters, where they had varying combinations of the following: (1) a designated personal desk or communal workspace; (2) keys or badges to gain full access; (3) access to conference rooms; and (4) the use of necessary office equipment (*e.g.*, telephones, printers, and copy machines) to perform their duties.[9] (Doc. 112 at 18; Doc. 112-1 at ¶¶ 63-37; Doc. 116 at ¶¶ 63, 64, 65-67).

Defendants appear to concede that Plaintiffs' assigned desks or cubicles in the real estate offices were the "employer's place of business," but argue that other areas in the

---

[9] Defendants confuse the definition of "headquarters" pursuant to 29 C.F.R. § 541.502 by citing to the Supreme Court's decision in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), which defined a corporation's "principal place of business," not an "employer's place of business" under the FLSA. (Doc. 115 at 8).

same assigned real estate offices were not the "employer's place of business." (Doc. 115 at 10).

For example, Defendants argue that the "Discovery Plaintiffs insisted that they spent the vast majority of their time in real estate agencies, although they conceded that they met with real estate agents in conference rooms, in the agents' offices, or elsewhere in the agency itself, away from any 'fixed site' within the agency, that is their assigned desks or cubicle where they might engage in telephonic sales." (Doc. 106-1 at 29). Defendants' argument is particularly perplexing given that Defendants' own internal document, titled "Loan Officer and Mortgage Advisor Activity Policy," refers to the assigned real estate office as a "fixed location."[10] Moreover, Defendants' Office Space Agreement with Realogy provides that LOs will have access to common areas such as conference rooms, and the marketing agreements between PHH Mortgage and independent franchise real estate offices provided LOs access to, and assigned space in, real estate offices.

Regardless of where PHH Mortgage's or PHH Loan's legal obligation to the real estate offices in question arises (*i.e.*, actual leasing agreements, Office Space Agreement, or Marketing Agreements), the result is the same—the assigned real estate offices

---

[10] Defendants' internal document, created by human resources in conjunction with its compensation, legal, and business departments, refers to each real estate office as a "fixed location." (Doc. 112-3, Ex. 1 at 47; Doc. 112-5, Ex. 15 at D0000052) ("The overall objectives of the LO policy are to… ensure every LO and MA understands and abides by the expectations with regards to time spent outside a fixed location, *i.e.*, Real Estate office.").

functioned as Plaintiffs' headquarters for their sales activities.[11] Moreover, in clear contradiction to Defendants' assertions, the deposition testimony unequivocally establishes that Plaintiffs were not merely assigned real estate offices to "visit"; rather, LOs were assigned real estate agencies as their headquarters so that they could develop relationships with the assigned office agents and increase loan sales.

Accordingly, this Court finds, as a matter of law, that the real estate agencies assigned to Plaintiffs were "fixed sites" and "headquarters" and therefore constituted an "employer's place of business" under 29 C.F.R. § 541.502.

### b. Plaintiffs' home offices

FLSA regulations specifically contemplate that an employee's home can be "an employer's place of business." 29 C.F.R. § 541.502 ("[A]ny fixed site, *whether home or office*, used by a sales person as a headquarters… is considered one of the employer's places of business…") (emphasis supplied). In addition to performing work at their assigned real estate offices, it is undisputed that Plaintiffs: (1) worked from their home offices in the early morning, evening, and/or over the weekends; and (2) performed the same type of work activities at their home offices as they did in their assigned real estate offices (completing loan applications, as well as calling and emailing clients and real estate agents). (Doc. 112-1 at ¶¶ 58, 59, 69; Doc. 116 at ¶¶ 58, 59, 69).

---

[11] Defendants interpret "headquarters" to mean the headquarters of its companies. (Doc. 161-1 at 38). This interpretation is contrary to the plain language of the regulation. "Headquarters" -- as defined in 29 C.F.R. § 541.502 -- refers to the *salesperson's* headquarters, not the *employer's* headquarters. *See Speert v. Proficio Mortg. Ventures, LLC*, No. JKB–10–718, 2011 WL 2417133, at *6 (D. Md. June 11, 2011).

The case of *Chao v. First Nat. Lending Corp.*, 516 F.Supp.2d 895 (N.D. Ohio 2006), is instructive. In *Chao*, the court found that loan officers were not exempt under the outside sales exemption because "[m]ost of their work was done from the office *or from their own homes*, through telephone or fax communications." *Id*. at 901 (emphasis supplied).[12] Like the LOs in *Chao*, the LOs in this case are regularly engaged in telephonic sales activities from their home offices. (Doc. 112-1 at ¶ 69).

Accordingly, this Court finds, as a matter of law, that Plaintiffs' home offices were "fixed sites" and "headquarters" and therefore constituted an "employer's place of business" under 29 C.F.R. § 541.502.

### 2. *"Customarily and Regularly Engaged" Away From the Employer's Place of Business*

Courts that have analyzed the "customarily and regularly engaged" element of 29 C.F.R. § 541.502, have concluded that the test is not merely a determination of where the employee is working the majority of the time. *See Dixon v. Prospect Mortg., LLC*, 1:13cv1434, 2014 WL 130942, at *10 (E.D. Va. Jan 14, 2014) (citing *Lint v. Nw. Mut. Life Ins. Co.*, No. 09CV1373, 2010 WL 4809604, at *3 (S.D. Cal. Nov. 19, 2010) (finding that spending ten to twenty percent of the time outside of the office engaged in sales activity is sufficient to trigger the exemption)).[13] There is no suggestion in the

---

[12] *See also* U.S. DOL Wage & Hour Op. Ltr., FLSA2006-11, 2006 WL 1094597, at *1-3 (Mar. 31, 2006) ("2006" Opinion Letter) (considering the loan officers' homes as the "employer's place of business" for the purposes of the outside sales exemption).

[13] *See also Taylor v. Waddell & Reed, Inc.*, No. 09cv2909, 2012 WL 10669, at *3 (S.D. Cal. Jan. 3, 2012) ("[S]elling or sales related activity outside the office 'one or two hours a day, one or two times a week' satisfie[s] the test for the exemption.").

14

regulations that work performed customarily or regularly must occupy any given percentage of an employee's weekly working hours. *See* DOL Wage Hour Op. Ltr. No. FLSA2007–2 at 3. Rather, the pertinent inquiry is whether the employee performs tasks critical to sales away from the office on a greater than occasional basis. *Id.* at 4 n. 3.[14]

"The question of how an employee spends his time is a question of fact, while the question of whether his activities fall within an exemption is a question of law." *Nielsen v. Devry, Inc.*, 302 F.Supp. 2d 747, 752 (W.D. Mich. 2003) (citations omitted). In this case, Plaintiffs' deposition testimony is contradictory and supports both parties' positions. For example, Plaintiff Hugh Gustafson testified that less than 1% of his leads that resulted in a generated mortgage occurred from outside his assigned real estate office, and he typically worked in his assigned real estate office from 8:30 a.m. to 6:30 p.m. during the work week. (Doc. 112-8, Ex. 26 at 8-10). In contrast, Mark Cervantes testified that he went out to lunch socially with real estate agents every day, met with clients 25% of the time outside his assigned real estate office, attended all closings (50% of which were outside the office), and attended open houses 2-3 Sundays a month.[15] Still

---

[14] *See also Dixon v. Prospect Mortg., LLC*, 1:13cv1434, 2014 WL 130942, at *7 (E.D. Va. Jan. 14, 2014) (citing *Wong v. HSBC Mortg. Corp.*, 749 F.Supp.2d 1009, 1013 (N.D. Cal. 2010)) ("[w]here some of those component activities take place at a fixed site and others take place outside of a fixed site, the employee is properly classified as an outside sales employee if the activities occurring outside of the office are critical to the sales process and occur on a consistent basis.").

[15] Former Plaintiff Kristine Rauch testified that she spent 25% of her time outside of her assigned real estate offices conducting lead-generating client services and activities, such as attending closings. (Doc. 107-3, Ex. M at 48). Defendants rely heavily on this testimony to support their claim that LOs were "customarily and regularly engaged" in outside sales activities. However, as a Plaintiff who chose not to participate in this litigation, the Court does not find the testimony of Kristine Rausch to be determinative. (Doc. 106-1 at 3).

other deposition testimony is unclear and inconsistent as to whether Plaintiffs "customarily and regularly engaged" in sales activities away from their employer's place of business. (*See* Doc. 107-1, Ex. F).

Taken as a whole, the evidence is inconclusive as to the nature of the activities Plaintiffs performed outside of the office and the amount of time they spent on each activity. Consequently, the Court finds that a genuine issue of material fact exists. Accordingly, this Court cannot determine whether Plaintiffs were "customarily and regularly engaged" away from the employer's place of business.

### C. Statute of Limitations

Finally, Defendants argue that this case is subject to a two-year statute of limitations, because there is no disputed fact regarding the non-willful nature of Defendants' alleged FLSA violations.

The FLSA provides two potential limitation periods: (1) a two-year statute of limitations applies for non-willful violations; and (2) a three-year statute of limitations applies for willful violations. *See* 29 U.S.C. § 255(a); *Desmond v. PNGI Charles Town Gaming*, *L.L.C.*, 630 F.3d 351, 357 (4th Cir. 2011). This two-tier system "makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988). As articulated by the Supreme Court, a violation is willful if the employer either knew or showed reckless disregard for whether its conduct was prohibited. *Id*. at 133. "If an employer acts unreasonably, but not recklessly, in determining its legal obligation," it is not considered willful. *Id*. at 135. Hence, "[m]ere negligence on the

part of the employer with regard to compliance with the FLSA is not sufficient to prove willfulness." *Hantz*, 2014 U.S. Dist. LEXIS 14359 at 8 (quoting *Gionfriddo v. Jason Zink*, *LLC,* 769 F.Supp.2d 880, 890 (D. Md. 2011)).

Defendants maintain that PHH Mortgage's compensation team evaluated the proper classification of the LO position during an extended evaluation and investigation in 2010. (Doc. 106-1 at 35). A PHH corporate representative testified that after a group of LOs in California claimed they were misclassified under California law in 2009, PHH undertook a rigorous review of the LO position. This process involved an evaluation of the LOs' role and responsibilities, their compensation structure, an extensive review of documents related to the LO position, and consultation with legal counsel. (Doc. 107-3, Ex. K at 26-27). After the review was completed, PHH Mortgage reaffirmed that the LO position was exempt from overtime and minimum wage requirements under the outside sales exemption. (Doc. 107-3, Ex. K at 31-24).

In response, Plaintiffs offer no evidence demonstrating that a genuine issue of material fact exists regarding the nature of Defendants' alleged violations. Instead, Plaintiffs argue that they are unable to respond to Defendants' statute of limitations argument, because Defendants refused to make "privileged" information about their evaluation and investigation available to Plaintiffs. (Doc. 118 at 28). Plaintiffs move this Court to compel Defendants "to fully respond to the discovery requests enumerated in Paragraph 5 of the Rule 56(d) Affidavit of Reena I. Desai within 14 days of the Courts Order." (Doc. 118 at 28). Specifically, Plaintiffs previously understood that Defendants claimed attorney-client privilege on certain documents and information, but Defendants

17

never indicated that they intended to rely on attorney consultation or privileged documents to prevail on the willfulness issue. As a result, Plaintiffs never moved to compel the information withheld on the basis of privilege. (Doc. 118, Ex. 2 at ¶ 4).

Accordingly, the Court finds that Defendants' statute of limitations issue is not yet ripe for review.[16]

## IV. CONCLUSION

For the reasons set forth above, the Court finds that:

1. As a matter of law, Plaintiffs' assigned real estate agencies constituted an "employer's place of business" under 29 C.F.R. § 541.502;

2. As a matter of law, Plaintiffs' home offices constituted an "employer's place of business" under 29 C.F.R. § 541.502;

3. There is a genuine dispute as to material facts regarding whether Plaintiffs were "customarily and regularly engaged" away from the employer's place of business under 29 C.F.R. § 541.502; and

4. Defendants' motion for summary judgment on the statute of limitations issue is held in abeyance pending resolution of the discovery dispute.

**IT IS SO ORDERED.**

Date: 6/17/14   /s/ Timothy S. Black
　　　　　　　　　　　　　　　　　　　　　Timothy S. Black
　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[16] The Court declines to compel Defendants to fully respond to the discovery requests without any information about Defendants' privilege argument. Additionally, the Court notes that it does not encourage discovery motions unless and until counsel first attempts to resolve the dispute extra-judicially and second contacts chambers for an informal discovery dispute conference pursuant to S.D. Ohio Civ. R. 37.1.